SHANNON, Chief Judge.
The appellant here, plaintiff below, brought a suit in replevin against the appel-lee, defendant below, to recover possession of a certain 1960 Ford automobile. Jury trial was waived, the case was tried by the court, and a final judgment was entered in favor of defendant. On December 4, 1959, the Central Bank of Tampa loaned J. E. Mims Motor Sales, Inc., owner of the car, $2,627.50, evidenced by promissory note and secured by chattel mortgage. Mims delivered to the bank a title certificate covering the automobile showing the owner to be E. L. Smith. This certificate had been endorsed to Mims upon its purchase of the automobile. The bank filed its lien with the Motor Vehicle Commissioner and it was noticed on the title certificate. The automobile was in the possession of J. E. Mims Motor Sales, Inc., in Tampa, and the evidence showed that the sales company was a dealer in both new and used cars. On January 6, 1960, Mims sold the automobile to one J. O. Ash, for which a cash payment was made and a note and conditional sales contract were executed by the purchaser. The note and conditional sales contract were assigned by Mims to the American Discount Company, a financing organization which had been doing business with Mims for several years. Neither Ash nor American Discount Company had actual knowledge of Mims’ prior chattel mortgage to the Central Bank. On or about July 11, 1960, Ash traded the automobile back to J. E. Mims Motor Sales, Inc., and later the dealer delivered possession of the automobile to Central Bank of Tampa.
This replevin action was then commenced and upon stipulation by the parties the car was sold and the proceeds thereof deposited in the registry of the court.
The court after taking testimony said in its final judgment:
“This cause came on for final hearing and trial before the Court sitting without a jury, neither party having requested a jury trial, and the Court having heard the testimony of the witnesses and argument of counsel, and being of the opinion that, under the *265 evidence, the rights of American Discount Company, plaintiff, rise no higher than its assignor, J. E. Mims Motor Sales, Inc., and that the chattel mortgage of defendant, Central Bank of Tampa, with the unpaid balance in the amount of Two Thousand and Twenty-Seven Dollars and Fifty Cents ($2,027.-50) is a first lien on the 1960 Ford Galaxie Automobile which is the subject matter of this suit and superior to the lien of plaintiff, American Discount Company, and the Court being fully advised in the premises, it is thereupon:
“Adjudged and Ordered that the complaint of the plaintiff be, and the same is hereby dismissed, with prejudice, * * * »
The apparent theory under which this case was tried indicates the plaintiff took the position that the defendant in taking the chattel mortgage on the car had done so with full knowledge that the car was a portion of the inventory of Mims, that Ash was, as to the bank, an innocent purchaser for value and that consequently when Mims assigned the conditional sales contract to American Discount Company, it was also a purchaser for value.
Ch. 319, Fla.Stat., F.S.A., is the Title Certificate Law by which the legislature has set forth the regulations and controls necessary to “stabilize the ownership, sale and transfer of motor vehicles so that confusion, fraud and chaos would be eliminated and the rights of bona fide owners of motor vehicles would be protected.” Castner v. Ziemer, Fla.App.1960, 125 So.2d 134, 136. The sections applicable here are:
“319.21 Necessity of certificate of title.- — No person hereafter shall sell or otherwise dispose of a motor vehicle without delivering to the purchaser or transferee thereof a certificate of title with such assignment thereon as may be necessary to show title in the purchaser, nor purchase, or otherwise acquire, or bring into this state a motor vehicle, except for temporary use, unless such person shall obtain a certificate of title for same in his, her or its-name in accordance with the provisions-of this law; provided that any dealer’ holding current dealer license plated issued by this state may, in lieu of having a certificate of title issued in the name of such dealer, reassign any existing certificate of title issued in this state or, if no certificate of title exists on such motor vehicles in this state, such dealer shall, over his signature, briefly note such fact of -nonexistence and show the name and address of the party from whom the vehicle was obtained, on the face of the separate application for initial certificate of title which is made by the purchaser or transferee. * * * ”
“319.22 Transfer of title.—
“(1) Except as provided in Secs, 319.21 and 319.28, no person acquiring a motor vehicle from the owner thereof, whether such owner be a dealer or otherwise, hereafter shall acquire a marketable title in or to said motor vehicle until he, she, or it shall have had issued to him, her or it a certificate of title to said motor vehicle; nor shall any waiver or estoppel operate in favor of such person against a person having possession of such certificate of title or an assignment of such certificate for said motor vehicle for a valuable consideration. Except as otherwise provided herein, no court in any case at law or in equity shall recognize the right, title, claim or interest of any person in or to any such motor vehicle, hereafter sold or disposed of, or mortgaged or encumbered, unless evidenced by and on a certificate of title duly issued, in accordance with the provisions of this law. * * *”■
“319.27(2) Any mortgage, conveyance intended to operate as a mortgage, trust receipt, conditional sales contract, or other similar instrument made after August 1, 1949, and covering a motor *266 vehicle required to be registered, if a notation of the lien or encumbrance has been made by the commissioner on the face of the certificate of title for such vehicle, shall be valid as against the creditors of the mortgagor whether armed with process or not and subsequent purchasers, mortgagees and other lien holders or claimants, * * * ”
In the instant case, the Central Bank loaned money on the car, took a note and chattel mortgage and caused the lien to be noted on the face of the title certificate by the Motor Vehicle Commissioner. Everything was done by the bank that should have been done. The testimony taken by the trial judge indicated that the dealer, Mims, assured the bank that this car was a business vehicle. We are unable to conclude from the evidence that the chattel mortgage taken by the bank was an instrument “covering any new or used * * * floor plan stock of any motor vehicle dealer.” Sec. 319.27(3) (b), Fla.Stat., F.S.A. When American Discount Company purchased the conditional sales contract from Mims it was under a duty to take notice of the duly recorded lien against this car. See Boynton Beach State Bank v. Wythe, Fla.App.1961, 126 So.2d 283; Castner v. Ziemer, Fla.App.1960, 125 So.2d 134; May v. Citizens National Bank of Orlando, Fla.App.1958, 100 So.2d 651; and McQueen v. M. & J. Finance Corp., Fla. 1952, 59 So.2d 49.
As the court stated in the May case, supra, “[w]e are concerned here with a used automobile, on which a title certificate has been issued in this state and is outstanding, and not a new vehicle, as to which the statutes make specific provision.” [100 So.2d 653.] See, in addition to Sec. 320.272 (1), Fla.Stat., F.S.A. the case of Trumbull Chevrolet Sales Company v. Seawright, 134 So.2d 829, decided by the District Court of Appeal, First District, on November 2, 1961.
The final judgment appealed is hereby affirmed.
Affirmed.
WHITE and SMITH, JJ., concur.